FAC6-16



FILED
IN CLERK'S OFFICE
.S. DISTRICT COURT E.D.N.Y.

☆  JUN 28 2016  ★

LONG ISLAND OFFICE

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF NEW YORK – CENTRAL ISLIP

BEVERLEY TAFFE,

        Plaintiff

v.

WELLS FARGO BANK, as Trustee of
a Trust for registered holders of the VNT Trust
Series 2010-2; TRIBECA LENDING CORP.,
As loan originator; LAW OFFICES OF BERKMAN,
HENOCH, PETERSON, PEDDY & FENCHEL,
a professional law corporation, individually and
jointly; MORTGAGE ELECTRONIC
REGISTRATION SYSTEM, aka MERS, an agent
for other defendants; HOME SERVICING, LLC, a
limited liability company as servicing agent for
Wells Fargo Bank, as Trustee; EQUIFAX,
TRANSUNION , jointly and severally
as credit reporting agencies, inclusively;
BRADY HANNON, as agent of Home Servicing LLC
as servicing agent of Wells Fargo Bank, as Trustee;
LISA CASA, an attorney; DONNA NAPOLITANO, an
Attorney; MATTHEW BURROW, an attorney;
and Does 1-20, as parties yet unknown,

        Defendants

---

CASE NO.: 15-cv-1962-JMA-AKT

**1st AMENDED COMPLAINT FOR DAMAGES AND  EQUITABLE RELIEF**

RECEIVED

JUN 2 8 2016

EDNY PRO SE OFFICE

DEMAND FOR JURY TRIAL

---

    1.  COMES NOW the **Plaintiff Beverley Taffe**, who hereby alleges as follows in this **FIRST AMENDED COMPLAINT** adding defendants LISA CASA, an attorney; DONNA NAPOLITANO, an Attorney; MATTHEW BURROW, an attorney, acting willfully and without jurisdiction over a matter in which plaintiff was a party in interest, and for additional and causes of

FAC6-16

action for wrongful foreclosure, intentional and negligent infliction of emotional distress, slander of title resulting in loss of prospective economic advantage from sale of residence, reformation of deeds and instruments to reflect proper title, et al, against the same and new defendants as specified within.

2.  Plaintiff file this an action for equitable relief *and* damages precipitated by the events and acts of defendants resulting in an illegal act committed by all defendants resulting in a wrongful foreclosure and for causes and relief as prayed associated therewith.   Plaintiff is a protected class of individuals as homeowners of real property within the state of New York and thus, under the provisions of copious protections as sampled from the New York Stats.

## JURISDICTION AND VENUE IS PROPER

2a. Plaintiff urges that this court may assume jurisdiction within this geographic venue over this multifaceted action under federal **question jurisdiction**, mostly **28 U.S.C. 1983**, et al., and/or **diversity jurisdiction**. The subject real property is within the venue region of this court. The evidence will show that a wrongful act was committed against plaintiff under color of law acting without jurisdiction maliciously.

## PARTIES

[Amended parties added *in bold*]

3.  Defendants  WELLS FARGO BANK, as Trustee of a Trust for registered holders of the VNT Trust Series 2010-2; TRIBECA LENDING CORP., As loan originator; LAW OFFICES OF BERKMAN, HENOCH, PETERSON, PEDDY & FENCHEL, a professional law corporation, individually and jointly; MORTGAGE ELECTRONIC REGISTRATION SYSTEM, aka MERS, an agent for other defendants; HOME SERVICING, LLC, a  limited liability company as servicing agent for Wells Fargo Bank, as Trustee; EQUIFAX, TRANSUNION and EXPERIAN*, jointly and severally as credit reporting agencies, inclusively; BRADY HANNON, as agent of Home Servicing LLC as servicing agent of Wells Fargo Bank, as Trustee; **LISA CASA, an attorney; DONNA NAPOLITANO, an attorney; MATTHEW BURROW,**  and  Does 1-20, as parties yet unknown are in some manner responsible for the wrongful and illegal acts complained of herein. Some Defendants and each of them are national banks, lenders and capital providers of purchase money loans to the public, their agents, officers, managing agents, assignees, successors in interest, bank trusts operating through and under the authority of Pooling and Servicing Agreements,

FAC6-16

appraisers, notaries, actual trustees and holding company's or pooling servicing agreement authorized trustees , and lawyers for defendants, and on *information and belief* are business entities, LLC's and corporations, organized and existed under the laws of the State of New York and other jurisdictions, yet unknown who have contacts and are doing business in New York.

4.      *Defendants  EQUIFAX, TRANSUNION , jointly and severally solely in their capacities as *credit reporting agencies*, inclusively and each of them are and at all times herein mentioned were and are, a business entity doing business in New York, sued for damages and equitable relief as pled.

5.      Defendant NON-ENTITIES ARE INDIVIDUALS with principal places of business within their county and state.

6.      Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), is a Delaware corporation with its principal place of business alleged to be in the State of Michigan who may have acted as a "nominee" or "custodian" of deeds of trust including Taffe's also called a "holder of a deed of trust" [DOT, hereafter] of the beneficiary loan originator. MERS had <u>no power to act without directed instructions from beneficiary, trustee or loan servicer</u>. Its purpose is the register assignments of DOTs to avoid the burden and fees charged by Counties in the U.S. customarily charged for such recordation of assignments. MERS by its national banking affiliation and activities does business in their county.

7.      "All Persons Unknown, Claiming Any Legal Or Equitable Right, Title, Estate, Lien, Or Interest In The Property Described In The Complaint Adverse To Plaintiff Title, Or Any Cloud On Plaintiff Title Thereto" are sued herein pursuant to New York Codes.

8.      Plaintiff is an individual and owner of property the subject premises of their action known as **51 Burnett Street, Hempstead, NY 11550**.

## DOE AND VICARIOUS LIABILITY ALLEGATIONS

9.      Plaintiff does not know the true names and capacities of the defendants sued herein as DOES 1 through 20 ("DOE Defendants"), inclusive, and therefore sues said DOE Defendants by fictitious names.  Plaintiff are informed and believe and based on such information and belief aver that each of the DOE Defendants is contractually, strictly, negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for the acts and omissions described herein.  Plaintiff will amend their Complaint to set forth the true names and capacities of each DOE Defendant when same are ascertained.

10.    Plaintiff are informed and believe and based on such information and belief aver that Defendants and DOE Defendants 1 through 20, inclusive, and each of them, are and at all material times have been, the agents, servants or employees of each other, purporting to act within the scope of said agency, service or employment in performing the acts and omitting to act as averred herein.

## ALLEGATIONS OF AGENCY

11.    Each of the Defendants named herein are believed to, and are alleged to have been acting in concert with, as employee, agent, co-conspirator or member of a joint venture of, each of the other Defendants, and are therefore alleged to be jointly and severally liable for the claims set forth herein, except as otherwise alleged.

## MOTION FOR CONSOLIDATION OF A RELATED REMOVED CASE

11a. Plaintiff alleges that she was and continues to be damaged as alleged and continues to be damaged, now with illegal act adjudging a foreclosure obtained whilst the matter was removed to this honorable court and without jurisdiction. That matter which is pending in NY state court from the County of Nassau, under case number 12578/2011, now formally removed and under federal case number 2:15-CV-00949 JMA-AKT and the subject of this immediate consolidation motion, as well, within the Removal bringing that case as joined with this instant matter. As a related case, the Removed case should in the interest of justice by consolidated with this matter as there are issues of commonality with common parties and claims here, affecting the removed action.

11b. It has been admitted by counsel for the plaintiffs in the removed case who are herein sued with the existing defendants, in filed court documents that while this removed case was vested within this federal court's jurisdiction, that defendants approved, consented to and condoned by using corruptly the services of their attorneys and legal agent, the filing of documents in the Supreme Court of New York to seeking illegally and without jurisdiction, a judgment of foreclosure against defendant Beverley Taffe all to her material damage and injury personally and economically and with the consent and condonation of Judge Thomas A. Adams of said court presiding over the matter who acted without jurisdiction, excuse, or judicial immunity, wrongfully all of which caused injury to this plaintiff, who was the defendant in the removed matter referenced. But for this series of intentional acts, the injuries would not have visited Ms. Taffe. Her sum of damages sought against all defendants both economically and non-economically amount to

FAC6-16

$1,500,000. Her prayer for punitive damages against all acting defendants is in the sum of $5,000,000 to punish and by example.

## GENERAL ALLEGATIONS

## FACTS CONCERNING THE LOAN'S AND ITS OWNERSHIP

### INTRODUCTION [newly amended]

The issue raised in this action of jurisprudential standing, has been one commonly eschewed in state and federal courts for decades, lawsuits being dismissed generally under any cause of action challenging the borrower of residential mortgages' right to challenge the beneficial interest, aka ownership of the promissory note and deed of trust or mortgage. However, this trend is eroding away as it should. The California Supreme Court in the February 2013 decision titled Yvanova v. New Century Mortgage Corp., decided on challenge that borrowers sufficiently raise the issue of a bank or lender's right to enforce a debt [note] or challenge the right to foreclose on the lien [mortgage or deed of trust] if properly raised in the seminal pleadings which ante disallowed largely such attacks by borrowers or severely limited such attacks. [1] While Yvanova by

---

[1]  Filed 2/18/16

IN THE SUPREME COURT OF CALIFORNIA

TSVETANA YVANOVA,

Plaintiff and Appellant,

v.

S218973

NEW CENTURY MORTGAGE CORP. et al,
CORPORATION et al.,

Ct.App. 2/1 B247188
Super. Ct.  No. LC097218

Defendants and Respondents.
)

The collapse in 2008 of the housing bubble and its accompanying system of home loan securitization led, among other consequences, to a great national wave of loan defaults and foreclosures. One key legal issue arising out of the collapse was whether and how defaulting homeowners could challenge the validity of the chain of assignments involved in securitization of their loans. We granted review in this case to decide one aspect of that question: whether the borrower on a home loan secured by a deed of trust may base an action for wrongful foreclosure on allegations a purported assignment of the note and deed of trust to the foreclosing party bore defects rendering the assignment void.
The Court of Appeal held plaintiff Tsvetana Yvanova could not state a cause of action for wrongful foreclosure based on an allegedly void assignment because she lacked standing to assert defects in the assignment, to which she was not a
2
party. We conclude, to the contrary, that because in a nonjudicial foreclosure only the original beneficiary of a deed of trust or its assignee or agent may direct the

no means is exhaustive in its scope nor dispositive precedent in New York, the logic of the court should signal a brisk pivot from disregarding borrowers legal attacks against lenders who act badly, indeed, illegally and who have been judicially insulated by wrong attitudes suggesting they have no right to ask for proof of ownership or rights attendant to the loan. The spirit of Yvanova suggests these challenges are no longer to be disregarded. So too, Ms. Taffe challenges here the lenders right to foreclose on two distinct fronts, the newer the subject of the 1st amended complaint for wrongful foreclosure, et al., by fraud by the defendants and the state court acting in concert, a fact admitted by lawyer defendants who moved to "set aside" the judgment they clearly knew they had no right to obtain. If not, then how do they explain away their motion filed suddenly to *vacate the judgment*?

12.    Plaintiff was and still should be the current legal owner of the subject premises by Grant or Warranty Deed but for the misconduct of the named defendants.  The loan consisted of a Note and Mortgage [aka deed of trust, as a lien on the residence]. Plaintiff in this action additionally challenges the enforceability of the Note, Mortgage and on various legal grounds including in the formation of the note and even of the court found viability existed, on grounds that Wells Fargo [hereafter, "WF"] has no evidentiary admissible proof it owns the Note.

13.   The preliminary allegations of material facts are:

a. Plaintiff is an obligor under a promissory note and mortgage [aka deed of trust] dated on or about September 29, 2006, crafted by the loan originator TRIBECA LENDING CORPORATION, [hereafter TLC], which is the subject of this action and for which funds were apparently paid for refinancing in the sum of $240,500 a single family home at the subject location which is plaintiff's PRIMARY RESIDENCE. Shortly after escrow closed a dispute arose in connection with the terms and conditions which did not match those promised by TRIBECA. TRIBACA was notified about this clear discrepancy prejudicing the plaintiff economically. Evidence shows the NOTE was owned by TLC from creation. The Note itself is absent any evidence of an ASSIGNMENT. There is a questioned Allonge that exists separately from the Note on which there is allegedly affixed an ink stamp showing an "Endorsement stamp" but there is no evidence of any entity to which it is assigned, transferred or hypothecated. The only evidence WF has offered to date of its

---

trustee to sell the property, an allegation that the assignment was void, and not
merely voidable at the behest of the parties to the assignment, will support an
action for wrongful foreclosure.

ownership of the Note rights is a "affidavit" from a defendant Brady Hannon dated January 10, 2014, asserting without any foundation or proof otherwise that "Plaintiff took physical possession of the Note…prior to commencement of the [state] action." Such a affidavit does not prove any material fact disputed showing proof of ownership. Moreover the trust into which the Note was alleged to have been received/deposited could not have been deposited timely TWO times based on a unverified phantom assignment from Tribeca for which there is no evidence from anyone or any witness with personal knowledge of the actual delivery and acceptance FROM Tribeca and Tribeca's avowal that it authorized this transfer by someone with authority to make the transfer. In New York Evidence there is no presumption of an assignment under phantom and unproved raw allegations by one with no personal knowledge of such. Moreover, plaintiff Taffe refers to the lengthy OPPOSITIO N to the MOTION TO REMAND including the testimony of a sitting judge in NY State Supreme Court who avers to a Congressional Committee that such transactions are very problematic and largely tainted. [See Opposition to WF Motion to Remand in federal case no.:2:15-CV-00949-JMA-AKT, filed in this district court].

b. Then on or about October 28, 2010, MERS assigned the MORTGAGE, to Huntington National Bank as trustee for a securitized Trust.

c. On the same date, Huntington assigned the MORTGATE to  <u>BUT NOT THE NOTE</u> being recorded on Nassau County on Nov. 6, 2010 in LIBER: 35326 PAGE:654.

d. The NOTE is claimed to have been ENDORSED in blank on a separate "Allonge"[separate stamped-endorsed document lacking named assignee] to the Note. The allegations in the state case removed affirm these facts but fails to allege by clear and competently founded evidence that WF owns the right to enforce the note since no evidence exists confirming WF's ownership. Mr. Hannon was not a participant nor a percipient witness to any assignment or physical transfer of the Note and no other evidence exists to support this evidentiary requirement.

e. *Arguendo*, WF if it owns the note has duties to plaintiff that were breached including fraudulently inducing her breach of the Note agreement, see *Fraud and Civil Rights Causes,* pled.

## GENERAL ALLEGATIONS OF NON-CONFORMING
## NOTE AND MORTGAGE

Plaintiff alleges the original Note and Mortgage have clear legal problems affecting enforceability of each, to wit. each document presented in the state action contained a <u>forgery and, not containing plaintiff's original wet-ink signatures</u>, thus there is question as to actual acceptance of the offer and acceptance of the consideration. As well, each document <u>did not contain the specific terms and conditions to which she agreed as a condition to accepting the loan</u>, thus, questions of the meeting of the minds on the terms offered. The content of the proffered documents was clearly not her agreed to documents. This property is the subject of a legal action by WFB in the state foreclosure action, and here a defendant, in which certain allegations were made based on these defective documents.

## GENERAL ALLEGATIONS

This action is not an attack on the pending removed action nor request to review or appeal to this court of the state case outcome.  Plaintiff should have title to her home but for the misconduct of the defendants and seeks in part reformation of the written instruments of ownership consistent with this ownership. Plaintiff is not challenging the state action but in relevant part, the manner WFB and its agents and attorneys passed off documents as genuine when they know otherwise and in doing so violated plaintiff's rights under federal law including **28 U.S.C. 1983**, et seq. In addition, plaintiff alleges that as part of the attempt to violate her civil rights that WFB does not possess the requisite proofs necessary to show legally that it holds title to the Note or has the jurisprudential right to foreclose as a result. Last, factually, the loan originator Tribeca Lending procured the loan by a means that was **discriminatory, prejudicial and disparate** by use of illegal criteria to inflate the cost and value of the loan to an African American woman when to others dissimilar the rates were globally lower.

13.1. The terms of **the actual loan agreed to** is not reflected in the purported Note. The true and correct terms of the purchase contract **was to have been** $0 down payment, 7.9% fixed. The Tribeca *Note* however misstated this amount to show a loan of $240,500 at an interest rate of 12.990, nearly 5 % higher than agreed, for 30 years with a monthly payment rate set at $ 2,658.53. Payments commenced on or about Oct. 29, 2006. She was promised a monthly payment of less, or $2,158.53, a sum $500 less per month.   The Note reflecting these incorrect sums is deceitful and fraudulent. Moreover, based on calculations of the **payments made** vs. **actually owed**, the actual Note was <u>not in default status and no default would have been justified</u>. As alleged below the sums were incorrectly stated in the Note. The state court foreclosure was thus a sham and based on the

deception commenced by Tribeca, assigned to another and last to WFB the alleged last assignee of the Note.

    13.2.   This action is subject to the provisions of the *New York Foreclosure Protection* legislation which requires conditions precedent to be satisfied prior to commencement of any foreclosure, but ONLY if they note is proved to be owned by the foreclosing defendant and it is THE actual note borrower's signed.  Plaintiff is uncertain of exactly who is the equitable owner of the existing Note or deed of trust or mortgage associated with the Note, thus, disputing <u>ownership of the rights of any and all defendants or third parties not named herein as parties</u>. Ownership of the Note in New York is <u>not an irrebuttable presumption nor factual inference</u> and is placed in issue <u>in these pleadings</u>.  Plaintiff deny that ANY named defendant legally possesses any Note rights or that the Note in question [should it be "found" by a defendant] was ever signed by the plaintiff and that the Note she may have endorse was NOT what she was promised by Tribeca. Thus, plaintiff has appropriately brought this action for the included purpose of these determinations by judicial decree, vis., declaratory relief or within other causes appropriately testing the ownership of this disputed Note.

    14.   Plaintiff's loan including the promissory note, deed of trust, assignments all are subject to the NY. Stats. governing foreclosures in New York and the requirements are binding upon any beneficiaries, loan servicers and trustees associated with the underlying promissory note. Under New York land laws, Note ownership must be proved as a condition to acting to protect the collection of the debt rights. Foreclosure laws are found generally in **N.Y. Real Prop. Acts. Law §§ 1301 to 1391.**

    15.   By judicial notice to all statutes and case law applicable, any material violations of the codes designed to protect consumers from improperly effected foreclosure proceedings are subject to injunction and restraining orders, concomitantly.

    16.   Redacted

    17.   Plaintiff alleges the content of any terms contained in the Note or Mortgage, aka, DOT [deed of trust] are fully subordinate to the provisions referenced and in the event of a breach, the code provisions govern.

    18.   Plaintiff alleges that foreclosing parties tortuously deceived plaintiff and have breached contracts **guaranteeing and promising to reduce the monthly payments and agreement not to declare default or to foreclose**, damaged plaintiff's credit, failed properly account for and credit

payments, was overcharged on their note from the time of the closing of escrow to the present resulting in charges not owed, but demanded by defendants, and placed other illegal charges against plaintiff loan account illegally. Their acts demonstrates a pattern and practice of illegal foreclosure activity and corruption causing plaintiff damages and economic injury.

19. Plaintiff alleges that the defendant entity attempting to foreclose on plaintiff's loan **Wells Fargo Bank** as a Trustee, does not own the Note and is fraudulently trying to foreclose without title, right or legal standing as alleged hereafter.

## DISCRIMINATION AND DISPARATE TREATMENT BASED ON RACIAL AND GENDER DISCRIMINATION UNDER 28 U.S.C. 1983, et al.

20. Plaintiff alleges that she is an African American female protected under the United States Constitution and statutory schemes protecting her from ethnic and gender discrimination under the law, including but not limited to **28 U.S.C. 1983**, et al.,[2] based on the **original lender Tribeca Lending** espoused as a pattern, policy and practice, but cryptically applied, using a form of racial and gender profiling affecting the original loan by acts showing she was subjected to different, disparate illegal treatment in the formation and development of the loan different from others who are **non-black, and non-females** and as a result was discriminated against by the offering of a clearly disparate loan terms that because of race and gender **overcharged her** for the property [by at least $75,000] , **heightened interest rates** [by 3 points minimum] illegally, falsely advertised goods and services to her under the *Lanham Act*, charged her **increased monthly payments** [overcharging by at least $500] not charged to others, added **forced placed insurance** [adding monthly payments against her loan and thus, to her payment requirements because she was non-white and female, and added excessive charges and illegal fees during the term of the loan continuing to the present and other requirements that made the loan disparate, economically against the limits placed on lenders of purchase money capital under federal law. This race based act is known in the secondary lender market as "the hustle," which disregards certain common

---

[2]  **42 U.S.C. § 1983 provides:**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

guidelines in allocating loans to those of African/Hispanic backgrounds placing them in undesirable loans economically desperate.

21.    Plaintiff alleges that if title has vested at all, Wells Fargo, as a trustee (hereafter, WF) and successor to Tribeca and others, as part of a well-crafted scheme to defraud and discriminate against plaintiff, have fraudulently commenced and prosecuted a wrongful foreclosure action in New York Supreme Court [trial court], referenced above. The evidence will show that in proffering evidence within that action, Wells Fargo used false and fraudulent documents, vouched for by individuals with no personal knowledge, attorneys with similar deficits, used counterfeit and false affidavits and documents that were not genuine, not signed by plaintiff, not certified properly to be those properly kept in the usual course of business by business entities, and falsely vouched for by lawyers representing WF and in doing so violated plaintiff right to due process under the 5th and 14th Amendments to the U.S. Constitution guaranteeing those rights by the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws," citing the statute.

22.    Plaintiff also asserts that in doing the acts complained of WF and others have illegally and foreseeably cheated and deprived plaintiff from federal and state tax benefits to which she is entitled under *Internal Revenue Codes* and statutes, but in doing so have defrauded the government of the United States of America based on a fraudulent benefit scheme that is provided to investors in Trusts comprised of invested Notes and securities who pay less taxes under a *Real Estate Mortgage Investment Trust Conduit* [REMIC] tax avoidance tool which was developed and for which WF as trustee is currently a participant in. Beneficiaries of the trust [aka investors] pay less or no taxes on the dividends under the scheme using the plaintiff's Note as part of the collateral paying interest under the REMIC. Plaintiff also asked WF for a *payoff balance* to which WF refused to respond thus thwarting and breaching the allowable purpose of the Note and discharging of the debt.  The end result is that plaintiff's Note is not owned by the Wells Fargo Trust and the benefit that the trust receives under this special tax treatment provision defrauds the United States of revenues to which it is entitled since WF had no evidence it owned the Note, thus the right to enforce said note is in question.

23 - 34.- Reserved.

---

## FIRST CAUSE OF ACTION FOR NEGLIGENT DAMAGE [TO CREDIT RATING, CREDIT WORTHINESS, INCREASED TAX LIABILITY]
### [Against All Defendants]

35.     Plaintiff incorporate herein by reference the allegations made in paragraphs 1 through 34, inclusive, as though fully set forth herein. Under New York law as articulated in the *Pattern Jury Instructions-Civil*, the standard of care imposed on a defendant, is "that degree of caution and attention with a person of ordinary skill and judgment would use under similar circumstances. What constitutes reasonable care depends upon the circumstances of a particular case." Moreover, "The violation of a statute, which is a cause of the plaintiff' injuries or damages, is evidence of negligence." The instructions define negligence as "…doing something that a person using reasonable care would not do, or not doing something that a person using reasonable care would do. Reasonable care means that caution, attention or skill a reasonable person would use under similar circumstances." Causation is defined as "proximate and concurring" under as follows:  "For the plaintiff to recover damages, the defendant's negligence must be a cause of the plaintiff's injury. [There may be more than one cause of an injury, that is, several negligent acts may work together. Each person whose negligent act is a cause of an injury is responsible.]" Clearly, the *prima facia* elements including act, duty, actual and legal cause [legal foreseeability] and damages are imposed on a defendant <u>doing business in the manner the defendants were acting</u> and to which they are subject to its requirements as articulated in the jury instructions.

35.1.   To the "foreseeability" issue, it is a matter of Judicial Notice that banks and lenders who believe a borrower has breached the duty to pay back a loan, will affirmatively "**report** to <u>credit reporting agencies</u> [hereafter *CRA*]," all default activity committed by the borrower. This being a known consequence of the overall lending industry, it is absolutely foreseeable that a detrimental credit score may follow. Such acts are governed in large part by the Fair Credit Reporting Act and Fair Debt Collection Acts, both alleged to have been violated by defendants and their agents, as alleged, *infra*.  Plaintiff urges the following query: "What if the default is improper or based on false or incorrect information and the report made to the CRA is factually false?" Thereafter, the credit report may show negatives and the score be lowered evidencing a poorer credit rating and thus defame and besmirch the creditworthiness of a borrower and their ability to borrow going forward compromising their right to have correct credit scores associated with their name and social security number.  Damages in such a case are *foreseeable*.  This has happened here as to each of the three defendant reporting agencies who have federal oversight under, inter alia, the FCRAct.

FAC6-16

36.    At all times relevant herein, the Defendants, acting as Plaintiff' lender and loan servicer, had a **duty to exercise reasonable care and skill** to maintain proper and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records, including, but not limited to, accurate crediting of correct payments made by Plaintiff.  Violation of their duty is alleged actually and proximately causing damages to plaintiff by defaming plaintiff's **credit reputation** [credit score] and **credit standing, increased tax liability to both the state and federal tax reporting requirements, caused by** errant understatement of payments exempt from income calculations and causing plaintiff financially induced emotional distress foreseeable as a consequence with actual physical manifestations which exceed the normal scope of **damages** permissible under the Note contract for breach of contract. Lending institutions and their agents and credit reporting agencies, named as individual Credit Reporting Agencies, also have similar <u>duties of care</u> to avoid financial damages and losses. Some of the criteria and duties are stated under the Uniform Commercial Code especially sections 3 and 4 governing financial transactions. The governance of these institutions is in place to avoid foreseeable harm from errors in accounting of loan files and resultant damage to credit and credit worthiness, *inter alia.*

37.    In taking the actions alleged above, and in failing to take the actions as alleged above, the Defendants **breached their duty of care to Plaintiff** in the calculating of the sums due under the obligation and of course, the servicing of Plaintiff' loan by, among other things, failing *to properly and accurately credit payments* made by Plaintiff toward the loan causing legally and proximately a breaching of their duty by preparing and therefore consequentially, recording and filing in court **false and inaccurate documents** including a **Notice of Default**, all  illegally on the Subject Property without having the legal authority and/or proper reviewed and authorized documentation to do so, not only violating their duty of due care, but statutorily violating the requirements of resulting in **negligence** *per se.*  Collectively, their activity has caused a second tier of <u>damage</u> to plaintiff's credit rating and record of the plaintiff herein causing a **drop in the credit evaluation** report from about 700, but due to the negative reports has plunged now to 465. Plaintiff alleges the defendants conduct has caused a <u>loss of credit worthiness,</u> a valuable asset to plaintiff in buying and acquisitions in the market place and a right plaintiff worked decades to develop and perfect.

FAC6-16

38.     As a direct and proximate result of the negligence and carelessness of the Defendants as set forth above, Plaintiff suffered physically, mentally, including general and special damages in an amount to be determined at trial.

39.     Based on the statutory duties attendant to all qualifying mortgages in the state, further duties are imposed on lenders, loan servicers and trustee defendants herein.

40.     Plaintiff allege that defendants are bound by these New York code requirements as incorporated by reference as appended at complaint's end.

41.     Plaintiff allege that all defendants violated their duties of due care and breached each provision causing damages to plaintiff.

43.     Plaintiff seeks such damages for injuries sustained by the breaching of these statutory duties which have caused injury to plaintiff in the sum of not less than $500,000.00

44. Reserved

## SECOND CAUSE OF ACTION FOR DECLARATORY JUDGMENT [3]

### [against all defendants except Credit Reporting Agencies and Supreme Court Judge sued herein]

45.     Plaintiff incorporate herein by reference the allegations made in paragraphs 1 through 44, inclusive, as though fully set forth herein.

---

[3] **RULE 57. DECLARATORY JUDGMENT**
These rules govern the procedure for obtaining a declaratory judgment under **28 U.S.C. §2201**. Rules 38 and 39 govern a demand for a jury trial. The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate. The court may order a speedy hearing of a declaratory-judgment action.
    *Notes*
(As amended Dec. 29, 1948, eff. Oct. 20, 1949; Apr. 30, 2007, eff. Dec. 1, 2007.)
Notes of Advisory Committee on Rules—1937

The fact that a declaratory judgment may be granted "whether or not further relief is or could be prayed" indicates that declaratory relief is alternative or cumulative and not exclusive or extraordinary. A declaratory judgment is appropriate when it will "terminate the controversy" giving rise to the proceeding. Inasmuch as it often involves only an issue of law on undisputed or relatively undisputed facts, it operates frequently as a summary proceeding, justifying docketing the case for early hearing as on a motion, as provided for in California (Code Civ.Proc. (Deering, 1937) §1062a), Michigan (3 Comp.Laws (1929) §13904), and Kentucky (Codes (Carroll, 1932) Civ.Pract. §639a–3).

The "controversy" must necessarily be "of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts." Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 325, 56 S.Ct. 466, 473, 80 L.Ed. 688, 699 (1936). The existence or nonexistence of any right, duty, power, liability, privilege, disability, or immunity or of any fact upon which such legal relations depend, or of a status, may be declared. The petitioner must have a practical interest in the declaration sought and all parties having an interest therein or adversely affected must be made parties or be cited. A declaration may not be rendered if a special statutory proceeding has been provided for the adjudication of some special type of case, but general ordinary or extraordinary legal remedies, whether regulated by statute or not, are not deemed special statutory proceedings.

46.    Plaintiff alleges that a <u>good faith case and controversy</u> has arisen concerning the prospective duties, rights and remedies incumbent upon the parties in their action by reason of defendants' <u>claims to equitable title and rights thereunder</u>.   Included is the question of the duty of plaintiff to continue making payments to any defendant without a declaration of ownership of the note and concurrent right to foreclose under the deed of trust.  Nor has any accounting been performed by any bank entity defendant to show the true sum of credits available to plaintiff and any unjustified charges levied on the loan account that are not enforceable or unjustified and subject to set off against the loan balance.

47.    Plaintiff asserts that their circumstance is a basis for declaratory relief to determine and quiet the conflicting assertions and claims among the various parties.

48.    Plaintiff asserts that the controversy involves rights and duties arising under a promissory note and deed of trust **the ownership of which may have been abrogated, voided, cancelled, hypothecated, transferred or assigned or vitiated by the original lender or any successor regardless of title or designation**. If so, WF cannot declaure a default, sue to foreclose or continue its relentless to do so in NY state courts illegally.

49.    Plaintiff asserts that if no defendant can prove by the evidence its inherent right to enforce the alleged note, no enforcement of the note or associated deed of trust is lawful.

50.    Plaintiff asserts if the assertions of para. 49, be proven, the debt is lawfully reduced to an unsecured debt or may invalidate the note altogether, and such finding may be determined by their cause of action, jointly or separately with others as pled herein.

**THIRD CAUSE OF ACTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION TO ENJOIN FORECLOSURE SALE OF SUBJECT PROPERTY TO ENJOIN FORECLOSURE OR COLLECTION ON THE NOTE OR ENFORCEMENT OF THE MORTGAGE [Violation of Foreclosure Protection Acts including the Failure of any Defendant to Comply with Pre-foreclosure and Pre-Non-Judicial Foreclosure Requirements Permitting Injunction of Foreclosure] FRCP Rule 65, et al., (by verified Complaint)**

51.    Plaintiff incorporate herein by reference the allegations made in all preceding paragraphs and causes of action inclusive, as though fully set forth herein.

52.    Plaintiff hereby **incorporates the content of the entire <u>Application for TRO and Preliminary Injunction</u> as though fully set forth** including the Prayer for relief as though fully

15    COMPLAINT   Taffe v. Wells Fargo Bank, et al.

set forth hereafter. Good cause exists where an imminent loss of a unique asset is threatened, no available remedy at law exists, irreparable harm is evidenced, and there is no means available to determine the equivalent damages sustained, and a likelihood of success on the injunctive application.  Plaintiff alleges all the elements exist for injunctive issuance.  Under their strict statutory scheme any violation of the requirements by a foreclosing defendant or third party agent, vis. trustee selling agent, must be enjoined. The core facts and elements are set forth in the Ex Parte Application for TRO and Preliminary Injunction to be filed.

52a. In this case at bar, undeniable evidence exists that defendants have violated statutes and at common law including those supporting the issuance of a preliminary injunction [see below] –including those defendants sued in the first cause of action for Negligence, and their successors in interest, assignees, agents and other Does 1-20 acting on their behalf.

53.      Plaintiff is entitled to injunctive relief to stop all further state litigation by TRO and injunction by writ of prohibition or mandate, of plaintiff's subject property for reasons stated. See **Ex Parte Application** if co-filed asserting grounds and good cause for issuance of a TRO and OSC re preliminary injunction, hereafter.

54.      **The content of** Plaintiff's *verified complaint* **are sufficient to satisfy the requirements of FRCP Rule 65.**

55.      As alleged in the co-filed Ex Parte Application for TRO and Preliminary Injunction, plaintiff alleges that each defendant has engaged in conduct sufficient to warrant the relief so sought and without which plaintiff will forever lose a valuable unique asset, plaintiff primary residence and single family home.

56.      Plaintiff seeks relief consistent with fairness and equity and will suffer irreparable harm without an injunctive order by writ being issued.

57. -74. Reserved

## FOURTH CAUSE OF ACTION
## FOR FRAUDULENT MISREPRESENTATION AGAINST ALL DEFENDANTS [Except the CREDIT REPORTING AGENCY DEFENDANTS]

75.      Plaintiff incorporate herein by reference the allegations made in prior paragraphs, inclusive, as though fully set forth herein. [4] TWO distinct frauds were perpetrated, the first by

---

[4]      To prevail on a claim of *fraudulent misrepresentation* in New York, a plaintiff must establish:

Tribeca and the second by WF and its agents. The first deception has previously been alleged above.  In the second to come the Plaintiff was deceived about a benefit that would materially affect their position contractually under the Promissory Note, see *infra*.

### Factual Allegations

76.     The terms of the note promised by TRIBECA to plaintiff was that the monthly payments would be approximately $500 per month less that the then current mortgage payments or any other sum stated in the Note. The Note was thus, incorrect. Plaintiff challenged this clear error. Moreover, Plaintiff was **not provided closing documents [particularly under the requirements of the TILA statutes] to confirm this fact by TRIBECA or the notary at signing or at any time thereafter.** Plaintiff began to complain about this discrepancy in or about 2008 through 2010. She also protested about what she found to be higher payments, and interest rate than agreed.

The content of the second intentional deception and fraud by WF is alleged. Plaintiff had a telephone contact on or about October, 2008, **prior to** the loan being "declared" to be in default by defendant WF, the original lender, in regard to reforming or "novating" the Note to better terms and payments. Plaintiff was called at least **five times** in which a "loan negotiator" whose name was difficult to parse but phonetically sounded like Charmela DeGarris or similar sounding name. This person stated by phone that,

"I am from your lender. We have a new and exciting program for you, our good paying borrowers.  If you don't pay your mortgage payment for 3 consecutive months, we can <u>guarantee</u> you a new Note and better terms than those under your present Note.

---

"(1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation."
     The defendant must actually be aware of the falsity, or at least the potential for falsity.  The requirement concerning knowledge of the falsity or reckless indifference as to the truth of the representation means either the defendant's actual knowledge that the representation was false or the defendant's awareness that he does not know whether the representation is true or false.

Negligence or misjudgment, "'however gross,'" does not satisfy the knowledge element. Ellerin, 337 NY at 232, 652 A.2d at 1125, quoting Cahill v. Applegarth, 98 NY 493, 502, 56 A. 794, 796 (1904). See also VF Corp. v. Wrexham Aviation Corp., 350 NY . 693 (1998).

A defendant must have the intent, the *scienter,* to cheat another: "It is well recognized under New York law that an action for fraud cannot be supported … without any design to impose upon or cheat another."  VF Corp. v. Wrexham Aviation Corp., 350 NY . 693, 703 (1998).
The complaining party though, must have reasonably relied on the defendant's representations.  To determine whether one party's reliance upon the allegedly fraudulent statements of another party is reasonable, a court looks to all the facts and circumstances present in the particular case.  "In determining whether reliance is reasonable, a court is required to view the act in its setting…." Parker v. Columbia Bank, 91 NY . App. At 361-362.

**Everyone in this program will qualify** and **your monthly rate will decrease**. If you comply by missing the 3 months of payments we **promise you that you will not be defaulted or foreclosed upon**."

76.a.  Plaintiff **reasonably believed** this was a reliable opportunity for a safe financial benefit and in reliance agreed to comply with the offer. Their forbearance to pay for 90 days occurred in compliance with bank's promise. Plaintiff learned later that the promise was a ruse, false statement but relied upon said statement thus, damaging plaintiff as calculated below when on the 4th successive month, a payment in the novated sum was rejected by the bank. This breached agreement has damaged plaintiff in sums to be proved at trial. But, there is a second tier of Fraud WF either precipitated or inherited.

76b.   Plaintiff alleged the content of ¶¶ 75 through 76a, above is hereby incorporated factually. At the time of this secondary novation, the Notes' monthly payment was **$2,658.53**. This was inconsistent with the sum promised by Tribeca which was over stated by approximately $500. The new novated monthly payment "gurarnteed"  was to be **$1,658.53 in** total, a reduction of about $1,000 per month. This was to be active from on or about January 1, 2009 to the present, thus  a total reduction over about the past 91 months totaling as of April, 2015 the sum of **$91,000**. This sum amounts to either a legal **set off** or a **credit** due the plaintiff. Although a novation [i.e., second agreement novating the first Note]  was secured and agreed to by plaintiff based on the statements of WF's agents, neither WF nor any successors in interest would honor the arrangement or legally perform.  This triggered a *fraudulent induced reliance* on the promises made and damages of over $80,000 to date.

76.c.  Plaintiff allege that after plaintiff  forbore making payments, and made on the fourth month the agreed tender to WF, WF simply rejected the payment and returned it to Plaintiff. Plaintiff called WF and spoke again to the same agent named above who stated:

> "We have no record of your loan being novated and you are in default and will have to be foreclosed upon."

Plaintiff were devastated about this denial of what was stated to be a *guarantee*, actually becoming physically ill from learning of this new information from this bank agent. Eventually the default notice, issued and received by Plaintiff failed to consider the sums due under the **enforceable novation guaranteed to Plaintiff,** which would require payments in a lesser sum.  **In fact, a proper accounting would reveal that on this date, the loan could not have been in**

**default, because the new contract would have diminished the monthly payments due as plead, *ante*.**

76d. Plaintiff urge a *second tier of fraud* by reason of the acts of WF and its predecessor in interest by commencing a <u>foreclosure</u> when it was promised one <u>would not be undertaken</u> if plaintiff complied with *the forbearance agreement* and paid the lesser monthly sum as WF had promised. These facts support the fraudulent intent of defendant and the denial of a material benefit offered and accepted by plaintiff.

77. To the extent the acts and representations of defendants were intentional or reckless and made with no intent to perform, <u>punitive damages</u> in a sum not less than **five million dollars** are sought in addition to economic and non-economic damages and recoverable as a remedy under state law governing punitive damages.

_____

### REQUEST FOR CONSOLIDATION OF *RELATED* REMOVED CASE

78. Plaintiff alleges that she was and continues to be damaged as alleged and continues to be damaged, now with the threat of foreclosure which is pending in NY state court and the subject of a consolidation motion within the Removal bringing that case into this court's venue. As a related case, the Removed case should in the interest of justice by consolidation with this matter.

79 to 82. Reserved

### FIFTH CAUSE OF ACTION FOR BREACH OF GOOD FAITH AND FAIR DEALING BY ALL DEFENDANTS [excluding Supreme Court Judge]

83. Plaintiff incorporate herein by reference the allegations made in paragraphs 1 through 82, inclusive, as though fully set forth herein.

83.1 Plaintiff alleges defendants breached the **promissory Note** and <u>secondary promises</u> [to modify/novate the payments] alleged all to plaintiff's damages. Plaintiff alleges that all contracts are governed by laws of New York. A promissory Note is a contract. A novation is a modification to a contract. Plaintiff and defendants were parties to two novations. The terms of contracts may be express or implied. Some terms of the bilateral contract "Note" and the subsequent novations affecting monthly duties to pay which formed the basis of the claims for promissory estoppel that were breached by WF regarding the two novations promised.

83.2 Plaintiff alleges that Promissory Note and the Novations in question contained **implied covenants of good faith and fair dealing** which was breached by reason of the above

alleged conduct by defendants and Does 1-20, inclusively.  Plaintiff further alleges that a strong public policy is encouraged by enforcement of implied terms of fair dealing as in their case at bar. F**raud** is patently not good faith or fair dealing.

84.    Plaintiff' original loan agreement or Note, set forth dates by which monthly principal and interest payments were due, and when late fees and other charges could be assessed. An implied term of the purchase money loan contract in writing was a **duty to keep accurate and honest records of all transactions** *vis a vis* the plaintiff and defendants and each of them and Does 1-100.

84a. By reason of the Tribeca fraudulent crafting of the note and mortgage, wrong sums and rates were charged cheating plaintiff economically. By reason of the second acts of fraud by WF, in denying an express agreement to change the payments in consideration for forebearing payments and then not to foreclose or declare a default, neither acted in good faith and with fair dealing.  As well, e**xcess charges were applied wrongfully** to plaintiff's account and entered in defendants' book and accounting records in the sum alleged in prior causes of action, including excessive interest not due or payable. The Promissory Note did not provide protections to borrowers from such acts by the lenders or their assigns as part of the express terms of the contract. However all contracts have **implied contractual duties and terms** under New York law which make illegal any act which promotes, fosters or condones a harm to a person's financial reputation or credit by the application of wrongful acts and omissions.  Such wrong and dishonest entries breached the contract as they purported to show plaintiff in arrears, late, tardy, and in default, which was not the case. These breaches formed the basis of and show a false history of late payments and caused a false default on the note.

85.    Subsequent note holders continued, by succession, the breaches by **never correcting the accounting errors caused initially by these sued defendants and foreclosing parties**, and their agents and Does 1-100, inclusively.

86.    The Defendants breached the loan terms and Note be failing to keep accurate records of all income received, credited, charges and payment histories breaching the duty alleged herein and the contract thereby damaging plaintiff in sums to be proven at trial.

87.    A second tier of breach of contract was the promises made to plaintiff that they would **not be defaulted** or **foreclosed** upon.  Damages as pled, ante, are alleged. Damages are

FAC6-16

sought in a sum to be determined at trial but in no case less than two million dollars severally against all defendant beneficiaries who are proven to hold the correct Note.

88. to 106. Reserved

## SIXTH CAUSE OF ACTION FOR
## QUIET TITLE [TO DETERMINE CORRECT OWNERSHIP OF THE NOTE, MORTGAGE AND REAL PROPERTY IN INTEREST]
## (AGAINST ONLY DEFENDANTS CLAIMING RIGHTS TO THE SUBJECT PROPERTY)

107.    Plaintiff incorporate herein by reference the allegations made in paragraphs 1 through 106, inclusive, as though fully set forth herein.

108.    Plaintiff are the equitable owners of the Subject Property which has the following legal description:

109.    Plaintiff seek to quiet title against the claims of Defendants and ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFF'S TITLE, OR ANY CLOUD ON PLAINTIFF'S TITLE THERETO; and DOES 1 through 100 Plaintiff DISPUTES that any named defendant has any right to assert title interests in the subject property by any instrument including deed of trust and no right to entertain any rights including the right to foreclosure, offering the Subject Property for sale at a trustee's sale, et al.

109.1. Plaintiff alleges that there is no requirement to "plead" quiet title for plaintiff to allege any offer to aka tender of the sums due, where all sums purportedly due have been disputed and such a dispute is known in the pleadings and put in issue lest. Plaintiff allege that they have tendered or offered to tender all sums due and not disputed as required to plead quiet title.

110.    Plaintiff alleges by incorporating the above allegations that defendants sued wrongfully procured title from plaintiff by a corrupt fraudulent means by using a court and its judicial offer to obtain a VOID JUDGMENT obtained whist the state case was lawfully removed from the state's jurisdiction.

111.    Plaintiff seeks to have all title and status's returned by judicial decree to establish the true and correct status of her ownership, *ante* the corrupt acts of defendants.

FAC6-16

112.   Plaintiff seeks to quiet title as of **9-29-2006**, the date of close of escrow and enforceability of the Note.  Plaintiff seeks a judicial declaration that the title to the Subject Property is vested in Plaintiff alone and that any Defendant and each of them be declared to have no interest estate, right, title or interest in the subject property nor their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Subject Property.

113. – 122. Reserved.

## SEVENTH CAUSE OF ACTION FOR ACCOUNTING [AGAINST ALL DEFENDANTS, THEIR AGENTS AND ASSIGNS, EXCEPT CREDIT REPORTING AGENCY]

123.   Plaintiff incorporate herein by reference the allegations made in paragraphs 1 through 112, inclusive, as though fully set forth herein. Plaintiff claims right to set off for credits due and owing but not yet credited and pray for an accounting of the loan file.

124.   Plaintiff demands an accounting of their entire loan account from any and all defendants and Does who have any knowledge, information, duties or rights under the original loan and Note concerning the transaction to determine the correct amount of the loan, note, payments made, payments due, credits due and payoff balance and that responsible defendants pay the cost of their cause of action as part of the damages awarded to plaintiff.

125.   Plaintiff alleges that there is no statutory or common law requirement that there be a "fiduciary" relationship to impose their remedy as the questioned sums paid, not credited, and the consequence of their uncertainty justify their remedy in equity. There is no way to correct this morass of bookkeeping irregularities without an order to account for sums "due" then paid.

## EIGHTH CAUSE OF ACTION FOR VIOLATION OF *FAIR DEBT COLLECTION PRACTICES ACT* -  15 U.S.C. 1601 *et seq* [AGAINST ALL DEFENDANTS except Supreme Court Judge]

125.   Plaintiff incorporate herein by reference the allegations made in paragraphs 1 through 124, inclusive, as though fully set forth herein.

126.   Plaintiff alleged that all defendants are defined as debt collectors within the meaning of federal version of the *Fair Debt Collection Practices Act* 15 U.S.C. 1601 et seq. See § 808, in

particular. [5] In doing acts complained of herein defendants alleged violated the act and damages are called out by statute for each violation for which plaintiff believe total over fifteen in number of violations.

127.  Plaintiff alleges that provisions of the act were violated *including but not limited to* **demanding of sums for payments <u>not due or owed ["not expressly authorized by the agreement] by plaintiff to any defendant</u>**. Such acts by defendants violate the act, *inter alia*. The law does not allow demand for collection of an unproven or disputed debt as plaintiff alleged has occurred here.

128.  Plaintiff asks for damages under the Acts and for all expenses, fees and sanctions allowed thereunder according to proof.

129 to 137. Reserved

### NINTH CAUSE OF ACTION FOR SPECIFIC PERFORMANCE BY PROMISSORY OR EQUITABLE ESTOPPEL [AGAINST All Defendants, except defendant Credit Reporting agency]

147.    Plaintiff repeats and re-pleads the entirety of the above allegations by incorporating same. Plaintiff alleges that the contract that was orally entered was part of the scheme to defraud plaintiff.  Plaintiff should be allowed under a theory of promissory estoppel, et al., to present facts to prove their oral agreement under NY. Stats. which reflects the **Restatement of Contracts** on point and holds, in pertinent part,

"Where a contract, which is required by law to be in writing, is prevented

from being put into writing by the fraud of a party thereto, any other party

who is by such fraud led to believe that it is in writing, and acts upon

such belief to their prejudice, may enforce it

against the fraudulent party."

---

[5] **§ 808.  Unfair practices [15 USC 1692f]**

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

**(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) <u>unless such amount is expressly authorized by the agreement creating the debt or permitted by law</u>.**

148.    Based on the above allegations, plaintiff states a cause of action for specific performance by equitable or promissory estoppel was created and is enforceable, based on the promise of a novated contract for reduced monthly payments and that no foreclosure will be imposed based on such promises as alleged more fully in the **Fraud** cause of action. Set offs or credits cannot now be denied and defendants must be estopped to deny the agreements consistent with the content of the FRAUD cause of action alleged, *ante*.

## TENTH CAUSE OF ACTION FOR BREACH OF TWO INDEPENDENT WRITTEN AND /OR ORAL CONTRACTS [both express and implied] AGAINST TRIBECA AND WFB, ONLY]

149.  Plaintiff repeats and re-pleads the entirety of the above allegations by incorporating same.  Breach of contract seminally stems from the existence of an agreement. [6] Further, the contract [vis., promissory note] was breached. This fact is asserted, as well under New York law articulated in the standard **jury instructions**. [7] The breach was induced by a deceptive inducement in violation of state law. [8] Damages have been alleged with specificity herein above and are awardable as a proper remedy in sums lost, and in set offs for overcharges. [9]

---

[6] ELEMENTS OF A CONTRACT
A contract consists of the following five elements:
(1) There must be two or more parties;
(2) The parties must have legal capacity to make the agreement;
(3) The parties must have mutually agreed to the contract;
(4) The parties must have stated with reasonable certainty what they have undertaken; and
(5) There must be consideration for the promise or promises.

[7] MATERIAL BREACH
    A material breach by one party relieves the other party from the duty of performance. A breach is material if it affects the purpose of the contract in an important or vital way.

[8] INDUCING BREACH OF CONTRACT
    A party to a contract cannot recover for a breach of that contract if he or she knowingly caused the other party to commit the breach.

[9] DAMAGES AS A REMEDY FOR BREACH OF CONTRACT —
COMPENSATORY DAMAGES FOR NONPERFORMANCE
    The plaintiff is entitled to be placed in the same situation as if the contract had not been broken. The damages therefore are the profits the plaintiff would have made had the contract been performed. These damages are arrived at after deducting the amount that it would have cost the plaintiff to have performed the contract.

DAMAGES AS A REMEDY FOR BREACH OF CONTRACT —
CONSEQUENTIAL DAMAGES
    In an action for breach of contract, the plaintiff may recover those damages which naturally arise from the breaking of the contract. Those damages are the consequences of breaking the contract which the defendant had reason

FAC6-16

150.  Plaintiff alleges that the terms of the Promissory Note and Deed of Trust and all implied terms that may be read into the terms under the law of Contracts were breached in two tiers of breaches, as follows.

151.  First, the Note contains implicit terms that protect a borrower from being taken advantage of by allowing that any change in the terms be enforced by borrower regardless of the existence of any writing where the borrower has reasonably relied upon the promises made by the lender, loan servicer or trustee which beneficially change by novation and or modification of terms, the borrower's position but which the borrower intentionally or negligently omits from a writing.  TWO SUCH PROMISES were made to the borrower-Plaintiff in that as alleged in the cause of action herein for FRAUD and intentional infliction of emotional distress, by the lenders or their agents and assignees promised to discount the monthly payments as alleged, *ante*, if the borrower would "stop making payments for 90 days." [10] When plaintiff complied the beneficial promise to reduce the payments was materially breached and refused. [11] The tender of funds to the loan originator and WF with rejection of the payments supports enforcement of both Novations in plaintiff's favor and by promissory estoppel.

152. Plaintiff allege a **second identifiable separate breach of contract** damaging their interest by contracting to **not foreclose** or **declare a default** as a material part of the **novation**, and abate any effort to do so as part of the new contract developed as alleged in the preceding paragraphs.  Their provision was breached materially damaging the plaintiff. [12] The damages are seen in the loss of down payment, excess charges including overpayment of principal and interest for each month after the agreed to reduction under the novation agreement, excessive fees, charges, forced placed insurance, and miscellaneous fees unjustified. All charges are subject to a legal SETOFF as a matter of state law.

---

to foresee would take place or such damages as may reasonably be supposed to have been contemplated by both parties when they made the contract.

**DAMAGES INCURRED IN RELIANCE ON OR IN PREPARATION OF CONTRACT**

A party harmed by breach of contract by another party may recover any expenses or losses incurred. This amount should be reduced by any expenditures that the breaching party can show the wronged party would have incurred if the contract had been performed.

[10] See Fraud cause of action, *supra.*
[11] See ¶ 140, *supra.*
[12] Ibid.

FAC6-16

153. But for their secondary breach independently and jointly with the first tier breach, the plaintiff has been injured economically in a sum of $500,000 or greater as proven at trial.

154. Reserved

## ELEVENTH CAUSE OF ACTION FOR VIOLATION OF RACKETEERING INFLUENCED CORRUPT ORGANIZATIONS ACT [*RICO*] 18 USC §§ 1961-1964, et al. AGAINST ALL DEFENDANTS

158.  Plaintiff incorporates the allegations from the above pleadings as though fully set forth.

159.  Plaintiff alleged that defendants and each of them have taken and committed acts that violate the *Racketeering Influenced Corrupt Organizations Act* [aka *RICO*] under 18 USC 1961-1964, et al.

160.  Plaintiff alleges all other named defendants have willfully violated the prohibitions set forth in the RICO statute at 18 USC 1962 which states in pertinent part:

§ 1962  (a)  It shall be unlawful for any person **who has received any income** derived, directly or indirectly, from a pattern of racketeering activity or **through collection of an unlawful debt** in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or **the activities of which affect, interstate or foreign commerce.** A purchase of securities [13] on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under their subsection if the securities of the issuer held by the purchaser, the members of their immediate family, and their or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or

---

[13] *Securities* arguably, includes the use of the 'corpus' or monetary value of securitized Trusts as a vehicle for promotion of corrupt and profligate monetary gain. WF stand as a participant perpetrator in this context.

control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or **collection of unlawful debt**. [14]

(d) It shall be unlawful for any person to **conspire** to violate any of the provisions of subsection (a), (b), or (c) of their section.

59.  Moreover, plaintiff alleges a right vests to plaintiff's benefit as follows:

§ 1964   (c) Any person injured in their business or property by reason of a violation of section 1962 of their chapter ... shall recover **threefold [3x] the damages** he sustains and the **cost of the suit**, including a **reasonable attorney's fee**, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

(d) A final judgment or decree rendered in favor of the United States in any criminal proceeding brought by the United States under their chapter shall estop the defendant from denying the essential allegations of the criminal offense in any subsequent civil proceeding brought by the United States.

161.  Plaintiff alleges that the sections 1343, 1341, 1344 place the acts of defendants within the purview of the statute and thus must be imposed on each targeted defendants. *Inter alia*, institutional bank fraud is included as prohibited corrupt practices amounting to racketeering under sub section (B).

161.  Plaintiff alleges the following sections found in §1961 apply.

162.  Plaintiff has sufficiently alleged a **false debt [one not owed, due or overinflated] was being collected**, that at least **two efforts and attempts were made to falsely collect**, that the evidence shows **intent to defraud** and cheat plaintiff in a scheme to fabricate the truth of the error then add additional **false charges to the loan, then and now, never due**.

---

[14]  Arguably, the conspiracy to obtain an illegal judgment would qualify.

163.  The alleged facts proffered in the above causes of action are incorporated here, to avoid redundancy and which support the specific pleading requirements under *Rule 8, Aschroft* and *Twombly*. But for the acts of the defendant and each of them and Does, plaintiff would not have been harmed.  Plaintiff seeks damages and statutory penalties in a sum allowed by law and in no event, less than $50,000,000 against the perpetrating defendants and Does.

## TWELFTH CAUSE OF ACTION FOR RESCISSION OF NOTE AND DEED OF TRUST UNDER *TRUTH IN LENDING ACT* [TILA] and RESTITUTION OF SUMS PAID [AGAINST ALL DEFENDANTS *EXCEPT* CREDIT REPORTING AGENCIES and  excluding Supreme Court Judge]

164.   Plaintiff incorporates the allegations from the above pleadings as though fully set forth.

165. Plaintiff alleged that violations of the terms of the Note and Deed of Trust, both individually and under the provisions of the **Truth in Lending Act** [aka TILA] and Real Estate Settlement Procedures Act [aka RESPA] terms, individually and jointly, as statutorily set forth govern their loan. As such, plaintiff alleges that they have a right to rescind the active note and deed of trust as a consequence.  Plaintiff alleges that original lender failed to conform their actions to the requirements of TILA and failed to give the required notices or disclosures called forth in the statute. Thus, plaintiff alleges she in writing rescinded timely the loan agreement consistent with the unanimous January 13, 2015 decision in **Jesinoski v. Countrywide Home Loans** address calling out at the pen of Justice Scalia writing for the court that a Rescission may be effected by mere letter to the lender within 3 years of the loan's finalization without filing an action.

166. Plaintiff alleges that if rescission is ordered that restitution should be ordered for all sums paid to defendant lender under the original Note and subsequent payments amounting to not less than $250,000. The exact amount shall be sought at trial.

## THIRTEENTH CAUSE OF ACTION FOR VIOLATION OF FAIR CREDIT REPORTING ACT - 15 USC 1681, et seq. [against TRIBECA, WF AND NAMED CREDIT REPORTING AGENCIES, ONLY and excluding Supreme Court Judge ]

170.   Plaintiff incorporate herein by reference the allegations made in paragraphs 1 through 169, inclusive, as though fully set forth herein.

171.   Plaintiff alleges that their individual and joint credit standing which is item of personal property and creditworthiness and credit reputation has been damaged by reason of the aforementioned acts of defendants as seen in the improper lowering of credit scores, in the case of Ms. Taffe from 690 to approximately 478.

172.   Plaintiff' credit history has now been altered and rendered to be substandard and reflective of a bad credit rating *vis a vis* the norm of the industry standards, thereby.

173.   Plaintiff in compliance with the FDRA **contacted to dispute the credit scores** and history contesting the data. Over **60 days passed without defendants making contact and without a resolution of the unlawful deterioration of the scores** the credit reporting agency defendants are required to keep accurate. Plaintiff's each have been damaged thereby and entitled to relief as called out in the state and federal FCRA statutes. Plaintiff seeks equitable relief to remedy and order all credit reporting agencies to correct their essentially defamatory rating and for damages against the defendants who proximately caused their harm in sums allowed under the law.

## FOURTEENTH CAUSE OF ACTION FOR VIOLATION OF 42 U.S.C.§ 3604, *ET SEQ.*, DISCRIMINATION AND VIOLATION OF DUE PROCESS

### [AGAINST ALL DEFENDANTS except Credit Reporting Agencies and Judge] [15]

---

[15]   42 U.S. Code § 3604 - Discrimination in the sale or rental of housing and other prohibited practices
Current through Pub. L. 114-38. (See Public Laws for the current Congress.)
As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful—
(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.
(c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.
(d) To represent to any person because of race, color, religion, sex, handicap, familial status, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.
(e) For profit, to induce or attempt to induce any person to sell or rent any dwelling by representations regarding the entry or prospective entry into the neighborhood of a person or persons of a particular race, color, religion, sex, handicap, familial status, or national origin.
(f)
(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—
(A) that buyer or renter,[1]
(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
(C) any person associated with that buyer or renter.

(2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—

(A) that person; or

(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

(C) any person associated with that person.

(3) For purposes of this subsection, discrimination includes—

(A) a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted.[2]

(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling; or

(C) in connection with the design and construction of covered multifamily dwellings for first occupancy after the date that is 30 months after September 13, 1988, a failure to design and construct those dwellings in such a manner that—

(i) the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons;

(ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and

(iii) all premises within such dwellings contain the following features of adaptive design:

(I) an accessible route into and through the dwelling;

(II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;

(III) reinforcements in bathroom walls to allow later installation of grab bars; and

(IV) usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

(4) Compliance with the appropriate requirements of the American National Standard for buildings and facilities providing accessibility and usability for physically handicapped people (commonly cited as "ANSI A117.1") suffices to satisfy the requirements of paragraph (3)(C)(iii).

(5)

(A) If a State or unit of general local government has incorporated into its laws the requirements set forth in paragraph (3)(C), compliance with such laws shall be deemed to satisfy the requirements of that paragraph.

(B) A State or unit of general local government may review and approve newly constructed covered multifamily dwellings for the purpose of making determinations as to whether the design and construction requirements of paragraph (3)(C) are met.

(C) The Secretary shall encourage, but may not require, States and units of local government to include in their existing procedures for the review and approval of newly constructed covered multifamily dwellings, determinations as to whether the design and construction of such dwellings are consistent with paragraph (3)(C), and shall provide technical assistance to States and units of local government and other persons to implement the requirements of paragraph (3)(C).

(D) Nothing in this subchapter shall be construed to require the Secretary to review or approve the plans, designs or construction of all covered multifamily dwellings, to determine whether the design and construction of such dwellings are consistent with the requirements of paragraph 3(C).

(6)

(A) Nothing in paragraph (5) shall be construed to affect the authority and responsibility of the Secretary or a State or local public agency certified pursuant to section 3610(f)(3) of this title to receive and process complaints or otherwise engage in enforcement activities under this subchapter.

(B) Determinations by a State or a unit of general local government under paragraphs (5)(A) and (B) shall not be conclusive in enforcement proceedings under this subchapter.

(7) As used in this subsection, the term "covered multifamily dwellings" means—

(A) buildings consisting of 4 or more units if such buildings have one or more elevators; and

(B) ground floor units in other buildings consisting of 4 or more units.

(8) Nothing in this subchapter shall be construed to invalidate or limit any law of a State or political subdivision of a State, or other jurisdiction in which this subchapter shall be effective, that requires dwellings to be designed and constructed in a manner that affords handicapped persons greater access than is required by this subchapter.

174.  Plaintiff repeats the allegations from paragraphs, above.  Plaintiff alleges that the phrase "sale" is not a one event act, but implies a series of acts occurring over the normal life of a conventional residential loan for a duration of 30 years. Thus, obtaining title is not a "sale"* since title is clouded by a mortgage, normally, the sale is not perfected short of the final pay off in which title is then in fee simple absolute.

175.  Plaintiff as owner of the property in question allege violations under *42 USC 3604* et al. which **prohibits certain practices of individuals based on race or national origin**, vis.,: 42 U.S. Code § 3604 - Discrimination in the sale* or rental of housing and other prohibited practices, vis.:

"As made applicable by section 3603 of this title and except as exempted by sections 3603 (b) and 3607 of this title, it shall be unlawful—

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny a dwelling to any person because of *race, color, religion, sex, familial status, or national origin.*

(b) To discriminate against any person in the **terms, conditions, or privileges of sale** or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of **race, color, religion, sex, familial status, or national origin**.

(c) del.

(d) del.

(e) For profit, to induce or attempt to induce any person to sell or rent any dwelling by representations regarding the entry or prospective entry into the neighborhood of a person or persons of a particular race, color, religion, sex, handicap, familial status, or national origin."

176.  Plaintiff alleges that the intent of the statute covers and **includes acts making false promises** affecting the subsequent negotiation of terms including beneficial novations, must and should be intended by the spirit if not the clear meaning of the statutes, above-referenced. Plaintiff where thus discriminated against.

177.  Plaintiff affected by this statute and its alleged violations African-American by race.

178.  The original loan given by the loan originator **Trebaca Lending Corp**. steered plaintiff to certain type and kind loan products *because* she was a "person of color," that thus here

_____

(9) Nothing in this subsection requires that a dwelling be made available to an individual whose tenancy would constitute a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damage to the property of others.

terms and conditions as drafted into the Note and DOT called for higher interest rates, higher payments due per month and higher purchase price and added included charges classifying the loan in what was known as a "subprime" loan. Higher interest rates and fees were tacked onto this variety of loans. Plaintiff interest rate Note was promised to be fixed at 7.9%. It instead was set at 12.990%. Monthly payment was promised to be less than shown in the note, but was not as alleged, *supra*. Non-Caucasians were charged higher sums than non-whites under this cryptic scheme similar if not identical to those allegations against Countrywide Home Loans alluded to on the US Attorney's Office of the US Department of Justice website at http://www.justice.gov/usao/cac/countrywide.html

Tribeca it is alleged did the same "hustle" on plaintiff, discriminated against people of color by steering thousands of loans to borrowers into subprime mortgages when white borrowers with SIMILAR CREDIT  PROFILES received prime loans at <u>lower interest rates and lower down payments</u>.

179.  Plaintiff alleges this caused a marked discrimination against plaintiff of color. None of these allegations or similar cause of action were part of the Removed action referenced or adjudicated therein to a final judgment.

180. Plaintiff has thus been discriminated against based on acts reasonably interpreted to cause a **false choice based on discriminated terms and conditions** targeting here, African-Americans of which plaintiff qualifies. The loans then were based on fraudulent statements requiring oppressive terms and conditions not required of non-color loan candidates,  that **one or more defendants condoned, approved, ratified, promoted by their managing agents, officers and governing boards which in effect discriminate, harm, cause physical symptoms of pain and suffering, mental anguish, distress against which the laws of the United States prohibit**.

181.  Plaintiff asks for general, special, punitive and statutory recovery of damages and attorney's fees as allowed by the law, by reason of these acts in a sum of $5,000,000.

**FIFTEENTH CAUSE OF ACTION FOR WRONGFUL FORECLOSURE AGAINST ALL DEFENDANTS** [EXCEPT CREDIT REPORTING AGENCIES AND JUDGE]

182. Plaintiff repeats and repleads by incorporation the content of the above complaint as through full set forth.

183.  Plaintiff alleges that the "new" defendant in concert for the formerly sued defendants still named herein have committed an intentional act of causing a wrongful foreclosure judgement

to be obtained without authority, jurisdiction or right in the Supreme Court of the State of New York by actively litigating a matter without jurisdiction.

184. The facts are as follows:

a. On August 29, 2011 a foreclosure lawsuit was filed against plaintiff in the NYSSC under case number 12578/78.

b. On February 15 2015, this instant case was Removed to the USDC for the Eastern District of New York – Central Islip under case number 15-cv-1962 JMA-AKT.

c. While this case was removed, without right, authority, or legal permission, all defendants sued, except the CRA defendants, to use the legal machinery and court of the state of NY to obtain a VOID judgment to vex, harass, annoy, slander, upset, injure and damage plaintiff who had legally remove the case prior. The case was not remanded at the time this clearly illegal and scandalous activity occurred. At the time State Court documents were proffered supporting motion for judgement on or about March 6, 2015 the State Court willfully encouraged and supported the misconduct of counsel and the named defendants herein in securing this judgement of foreclosure without jurisdiction to do so.

d. All defendants conspired to violate the rights and protections afforded plaintiff and in doing so injured and damaged plaintiff in the sums state herein above

185. Plaintiff is entitled to damages including punitive damages as alleged, above and further is entitled to have her title reformed to a prejudgment condition at equity.

186. Plaintiff recites from above that attorneys at law acting with their client's authority and consent regardless if it's unethical and illegal intent all acted in concert with each other, the other defendants and the court's judge in procuring this illegal act.

187. Plaintiff alleges that this was an act of wrongful foreclosure, preformed maliciously, willfully and intentionally designed to injure plaintiff who to that point in time held legal title to the property and against whom no prior judgment had been legally entered affecting her title.

## SLANDER OF TITLE AND DISPARAGEMENT

188. Plaintiff attorneys admitted to their wrongdoing after being confronted by the plaintiff, who then in a distinct push-back effort filed a motion to vacate the foreclose judgment in which they admitted to the acts plead herein. To date as a continuing act, the title to her properly has been disparaged and slandered and Ms. Taffe's credit, body, mind, emotions and well-being has been negatively affected by this series of conspiratorial activates of the accused defendants.

## SIXTEENTH CAUSE OF ACTION FOR REFORMATION OF DEEDS AND INSTRUMENTS [AGAINST ALL DEFENDANTS EXCEPT CREDIT REPORTING AGENCIES AND JUDGE]

189.  Plaintiff repeats and repleads by incorporation the content of the above complaint as through full set forth.

190. Plaintiff seeks orders reforming all deeds and canceling the judgment as void as a matter of law and to order the deeds and instruments affected to be restored to their pre-judgment status in equity.

## PRAYER FOR RELIEF

Wherefore, Plaintiff pray for judgment against the Defendants and each of them, jointly and severally, as follows:

1.      For a declaration of the rights and duties of the parties by declaratory judgment;

2.      For issuance of an Order reversing all judgments of foreclosure;

3.      To cancel, set aside and vacate the recordation of any Notice of Default;

4.      To cancel and reform all deeds, in favor of plaintiff name;

5.      To quiet title in favor of Plaintiff as pled;

6.      For compensatory according to proof against all Defendants.

7.      For attorney's fees according to contract.

8.      For civil penalties pursuant to statute, restitution, injunctive relief and reasonable attorney's fees according to proof.

9.      For reasonable costs of suit and such other and further relief as the Court deems proper;

10.      For TRO and preliminary injunction as pled and moved in the TRO applications;

11.      For orders correcting the damage caused to each plaintiff's credit scores affecting their credit worthiness and for orders correcting errant scores according to proof under the FCRA.

12.      For rescission and cancellation of the note and mortgage and to order restitution of all sums paid under the Note as called out in the federal TILA statutory scheme;

13.      For General damages in the sum of $1,500,000 and Special damages in the sum to be proven at trial for out of pocket expenses and for Punitive damages in the sum of $5,000,000 against all defendants jointly and severally;

FAC6-16

14.    For all further relief that to this court seems just.

June 27, 2016

*Beverley Taffe*

Beverley Taffe, Plaintiff in pro se
51 Burnett St.
Hempstead, NY 11550
TEL: 516-489-1364

---

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document known as a

FIRST AMENDED COMPLAINT AND SUMMON ON FIRST AMENDED COMPALINT has

been served upon the following counsel via [Personal Delivery] or [facsimile] or by U.S. Mail in

accordance with the USDC Rules of Civil Procedure on June 28 , 2016 :

Attorneys or Parties served:

FAC6-16

By Personal Service upon:

Or by U.S. Mail to:

United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip NY 11722

Beverley Taffe
Beverley Taffe, Affiant